UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TEMIA HARRIS o/b/o K.L.F.,

      Plaintiff,

v.                                                          Case No. 8:22-cv-323-MAP

COMMISSIONER OF SOCIAL SECURITY

      Defendant.

_____/

**<u>ORDER</u>**

Plaintiff seeks judicial review of the denial of her minor child's (Claimant) claim for Supplemental Security Income (SSI).[1]  Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by (1) failing to consider and find that Claimant met the Listing for intellectual disorders; and (2) finding that Claimant did not functionally equal the listings in severity because Claimant had a less than marked limitation in the domain of attending and completing tasks.  As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    *I.*    *Background*

Claimant, who was born in 2006, claimed disability beginning July 1, 2011 (Tr. 131-32).  He was four years old on the alleged onset date.  Claimant was a school-aged

---

[1]  The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

child on May 9, 2019, the application date and on the date of the ALJ's decision (Tr. 23). Specifically, at the time of the decision, Claimant was 14 years old and in the ninth grade (Tr. 47). Claimant had no work history (Tr. 144).

Given Claimant's alleged disability, Plaintiff protectively filed an application for SSI on behalf of Claimant (Tr. 131-40). The Social Security Administration (SSA) denied Claimant's claims both initially and upon reconsideration (Tr. 61-96). Plaintiff then requested an administrative hearing (Tr. 97-99). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 37-60). Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Claimant's claims for benefits (Tr. 19-36).

In rendering the administrative decision, the ALJ concluded that Claimant had not engaged in substantial gainful activity since May 9, 2019, the application date (Tr. 23). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Claimant had the following severe impairments: attention deficit hyperactivity disorder (ADHD), speech/language disorder, and asthma (Tr. 23). Notwithstanding the noted impairments, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ also determined that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (Tr. 24). In making that determination, the ALJ found that Claimant experienced a marked limitation in acquiring and using information; a less than marked limitation in attending and

completing tasks, moving about and manipulating objects, and health and physical well-being; and no limitation in interacting and relating with others and in the ability to care for himself (Tr 25).  The ALJ then concluded that Claimant had not been disabled since May 9, 2019 (Tr. 30).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 125-28).  Plaintiff then timely filed a complaint with this Court on behalf of Claimant (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.    *Standard of Review*

To be entitled to benefits, an individual under the age of 18 must demonstrate that he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  Like the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. § 416.924(a).  The first step requires the Commissioner to determine whether the child is performing substantial gainful activity.  20 C.F.R. § 416.924(a) & (b).  If so, a finding of not disabled is warranted.  20 C.F.R. § 416.924(a) & (b).  If not, the second step asks whether the child has a severe impairment.  20 C.F.R. § 416.924(a) & (c).  If the child does not have a severe impairment, the child is considered not disabled.  20 C.F.R. § 416.924(a) & (c).  If a severe impairment exists, the third and final step in the analysis involves a determination whether the child has an impairment that meets, medically equals, or functionally equals a set of criteria in

the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.924(a) & (d).

For a child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning.  20 C.F.R. § 416.926a(a).  A child has a "marked" limitation in a domain when the impairment(s) interferes seriously with his or her ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2)(i).  A child has an "extreme" limitation when the child's impairment(s) interferes very seriously with the child's ability to independently initiate, sustain, or complete activities and the limitation is "more than marked."  20 C.F.R. § 416.926a(e)(3)(i).  An extreme limitation is assigned only to the worst limitations but does not necessarily mean a total lack or loss of ability to function.  20 C.F.R. § 416.926a(e)(3)(i).  In assessing functional equivalence, the Commissioner considers the child's functioning in terms of the following six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi), (g)-(l).  These domains represent broad areas of functioning intended to capture all of what a child can or cannot do.  Social Security Ruling (SSR) 09-1P, 2009 WL 396031, at *1 (Feb. 17, 2009).

Stated simply, if a child has an impairment that meets, medically equals, or functionally equals a listed impairment, and the impairment meets the duration requirement, the child will be found disabled.  20 C.F.R. § 416.924(a) & (d)(1). Conversely, if the child does not have such impairment, or he or she does not meet the duration requirement, the child will be found not disabled.  20 C.F.R. § 416.924(a) & (d)(2).  A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of

the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.    Discussion

Plaintiff contends that the ALJ erred by failing to consider whether Claimant met the requirements for Listing 112.05 by failing to address the intellectual disorder of borderline intellectual functioning as part of Claimant's impairments and that the ALJ erred by failing to find that Claimant functionally equaled the Listings in severity by concluding that Claimant had less than a marked limitation in the domain of attending and completing tasks.  In the decision, the ALJ found Claimant's ADHD, speech/language disorder, and asthma to constitute severe impairments but did not identify Claimant's borderline intellectual functioning as a severe impairment (Tr. 23). The ALJ then concluded that the medical evidence did not establish that Claimant's impairments, considered individually or in combination, met or medically equaled the severity of a listed impairment.  The ALJ considered Listing 103.03 for asthma, Listing 111.09 for communication impairment, and Listing 112.11 for neurodevelopmental disorders (Tr. 23-24)  Listing 112.11 requires the following:

112.11 Neurodevelopmental disorders (see 112.00B9), for children age 3 to attainment of age 18, satisfied by A and B:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. One or both of the following:

a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2. Significant difficulties learning and using academic skills; or

3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

1. Understand, remember, or apply information (see 112.00E1).

2. Interact with others (see 112.00E2).

3. Concentrate, persist, or maintain pace (see 112.00E3).

4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.  In considering whether Plaintiff's

impairment met Listing 112.11, the ALJ stated:

> In terms of listing 112.11 for neurodevelopmental disorders for children age three to attainment of 18 is satisfied by A and B.  Part A requires medical documentation of 1, 2, or 3.  Subpart 1 requires one or both of the following: frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or hyperactive and impulsive behavior.  Subpart 2 requires significant difficulties learning and using academic skills.  Subpart 3 requires recurrent motor movement or vocalization.  Part B requires either an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate persist, or maintain pace; and adapt or manage oneself.  The evidence failed to show the claimant satisfied the requirements of Parts A and B.  Accordingly, the claimant's impairments do not meet Listing 112.11

(Tr. 23-24).

Plaintiff argues that the ALJ erred by failing to consider whether Claimant's borderline intellectual functioning met the requirements of Listing 112.05, while the Commissioner argues that the Listings for childhood mental disorders dictated that the ALJ did not need to consider Listing 112.05.  The introductory text to the Listings for mental disorders in children in effect at the time of the ALJ's decision set forth a distinction between which types of mental disorders fell under Listing 112.05 and under Listing 112.11, as follows:

> 4. Intellectual disorder (112.05).
>
> a. This disorder is characterized by significantly subaverage general intellectual functioning and significant deficits in current adaptive functioning. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning.
>
> b. The disorder that we evaluate in this category may be described in the evidence as intellectual disability, intellectual developmental disorder, or historically used terms such as "mental retardation."
>
> c. This category does not include the mental disorders that we evaluate under neurocognitive disorders (112.02), autism spectrum disorder (112.10), or neurodevelopmental disorders (112.11).
>
> ***
>
> 9. Neurodevelopmental disorders (112.11).
>
> a. These disorders are characterized by onset during the developmental period, that is, during childhood or adolescence, although sometimes they are not diagnosed until adulthood. Symptoms and signs may include, but are not limited to, underlying abnormalities in cognitive processing (for example, deficits in learning and applying verbal or nonverbal information, visual perception, memory, or a combination of these); deficits in attention or impulse control; low frustration tolerance; excessive or poorly planned motor activity; difficulty with organizing (time, space, materials, or tasks); repeated accidental injury; and deficits in social skills. Symptoms and signs specific to tic disorders include

sudden, rapid, recurrent, non-rhythmic, motor movement or vocalization.

b. Examples of disorders that we evaluate in this category include specific learning disorder, borderline intellectual functioning, and tic disorders (such as Tourette syndrome).

c. This category does not include the mental disorders that we evaluate under neurocognitive disorders (112.02), autism spectrum disorder (112.10), or personality and impulse-control disorders (112.08).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 112.00B.4. & B.9.  In August 2019, Dr. Gregory Landrum diagnosed Plaintiff with borderline intellectual functioning.  On its face, the introductory text would appear to preclude consideration of Listing 112.05 if considering Dr. Landrum's diagnosis of borderline intellectual functioning in isolation.  Such a conclusion would effectively elevate form over substance as it pertains to Claimant, however.

Claimant presented to Dr. Landrum in August 2019 for an evaluation at the request of the SSA (Tr. 332-34).  Plaintiff stated that Claimant had been able to obtain passing grades on most of his schoolwork but had been failing math at that time (Tr. 332).  Dr. Landrum indicated that Claimant's motor behavior appeared restless but that Claimant was not deemed to be in constant motion; Plaintiff required some redirection to tasks but was responsive to encouragement; Plaintiff's speech quantity was believed to be limited, but his speech was without significant articulation errors; Plaintiff showed mild symptoms of anxiety in the form of his mild restlessness; Plaintiff's attention and concentration were considered generally fair; and the rest of Plaintiff's behavioral observations and mental status examination findings were unremarkable (Tr. 332-33).  Dr. Landrum conducted the Wechsler Intelligence Scale

for Children test, and Claimant obtained a Verbal Comprehension Composite Score of 70, a Perceptual Reasoning Composite Score of 81, a Fluid Reasoning Score of 79, a Working Memory Composite Score of 82, a Processing Speed Composite Score of 75, and a Full-Scale IQ of 71, which put Claimant within the very low range of intellectual functioning (Tr. 333).

Dr. Landrum also conducted the Woodcock-Johnson Psycho-Educational Battery test, noting that, while Claimant could perform most of the tasks attempted, he was extremely slow, and that time factor certainly affected his normative results on the tasks attempted (Tr. 334). Dr. Landrum elaborated that Claimant appeared very cautious and needed encouragement to persist on all tasks (Tr. 334). To summarize, Dr. Landrum stated that Claimant's achievement results appeared to fall well below his grade placement for the most part, and Claimant's slow production affected his sentence reading fluency score as much as his math fluency result because of Claimant's need for time to complete even simple fluency tasks (Tr. 334). Consequently, Dr. Landrum diagnosed Claimant with borderline intellectual functioning, indicated that the test results supported the impression of an academic learning disability and probable need for continued exceptional student education (ESE) services, and offered a prognosis of fair to good if ESE services were provided (Tr. 334).

Such findings are significant because they show that Claimant attained a Full-Scale IQ score of 71 and a verbal score of 70 (Doc. 333), which would bring Claimant's

impairment within the description of Listing 112.05, despite the official diagnosis of borderline intellectual functioning.  Notably, Listing 112.05 provides:

> 112.05 Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:
>
> A. Satisfied by 1 and 2 (see 112.00H):
>
> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>
> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.
>
> OR
>
> B. Satisfied by 1 and 2 (see 112.00H):
>
> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a. Understand, remember, or apply information (see 112.00E1); or
>
> b. Interact with others (see 112.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 112.00E3); or
>
> d. Adapt or manage oneself (see 112.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 112.05.  Given Dr. Landrum's test results, Claimant satisfied the criteria for paragraph B.1.b of Listing 112.05.  Further, as the Commissioner concedes, the ALJ's finding that Claimant experienced a marked limitation in acquiring and using information equates to a finding of a marked limitation in understanding, remembering, or applying information (Doc. 17, at 11; Tr. 25), meaning that Claimant also satisfied part of the criteria for paragraph B.2.  The question then remains whether Claimant can satisfy the remaining requirements of paragraph B.2. for Listing 112.05 – a question properly resolved by the ALJ in the first instance.

Although the Commissioner argues that Claimant's impairment does not functionally equal similar criteria under Listing 112.11, the record reveals a significant amount of evidence that could be determined to support a finding that Claimant's impairments met or functionally equaled Listing 112.05.  For example, in September 2018, Phimagham Premkanth, M.D., noted that Claimant had a development disorder of scholastic skills, unspecified, so referred Claimant to a neurologist (Tr. 271).  The following month, Claimant reported to Eric Vernier, M.D., for a neurological consultation to address developmental delay, poor school performance, and staring spells (Tr. 294-96).  Dr. Vernier diagnosed Claimant with ADHD based on statements from Plaintiff and Claimant's teachers regarding Claimant's inability to concentrate, comprehend, or remember (Tr. 294-96).  Later, Dr. Vernier conducted the Test of Variable of Attention (T.O.V.A. Test), which measures attention, to determine Claimant's clinical diagnosis after reports from Claimant's teachers that Claimant

made careless mistakes and from Plaintiff that Claimant talked too much, had difficulty organizing tasks, failed to finish activities, and intruded in other people's conversations (Tr. 300-02).  The T.O.V.A. Test revealed results within normal limits (Tr. 302).

Claimant followed up with Dr. Vernier in January 2019 to again address developmental delay and poor school performance (Tr. 303-06).  Dr. Vernier indicated that Claimant was doing well behaviorally but poor academically, noting that Claimant attended school with an individualized education program (IEP) and in ESE courses (Tr. 303).  Dr. Vernier assessed Claimant with an academic problem, inattention, attention deficit disorder (ADD) without hyperactivity, and a learning disability based upon Plaintiff's statement that a neuropsychiatrist diagnosed Claimant with the learning disability (Tr. 305).  To treat the inattention and ADD, Dr. Vernier prescribed Claimant a daily dose of Vyvanse capsules as both Claimant's teacher's and parent's reported test scores for Claimant showed high levels of inattentiveness (Tr. 305).

Thereafter, a team evaluated Claimant's IEP in May 2019 and determined that Claimant needed an IEP for the next year (Tr. 312-30).  Claimant's primary disability was identified as a language impairment (LI), which was defined as a disorder in one or more of the basic learning processes involved in understanding or in using spoken or written language and which interfered with communication, adversely affecting performance and/or functioning in Claimant's typical learning environment (Tr. 314-15).  Review of subject area assessments, work samples, and teacher observations

showed that Claimant struggled with reading, decoding, and comprehension; had great difficulty demonstrating the ability to comprehend grade-level text, answer lower and higher order questions, and write written responses across all subject areas; did not master the goal for writing a three- to four-paragraph argumentative/informational essay and cite to textual evidence; and did not write any sentences on his first Progress Monitoring Writing (PM) and copied verbatim from the text on the two subsequent PMs (Tr. 312).

Teacher observations indicated that Claimant needed one-on-one teacher attention and assistance when completing assignments in all classes and that assignments and information needed to be taught in small segments, with repetition over a period of time necessary to reinforce the skills (Tr. 312). Among several other deficiencies identified, Claimant was reported as reading about five years below grade level and performing mathematics 4.1 years below grade level (Tr. 317-18). Notably, the report indicated that Claimant's "significant difficulty with receptive and expressive language skills affects his involvement and progress in the general curriculum by interfering with his ability to answer comprehension questions after reading an instructional level passage, write one paragraph about a single topic and solve one[-]step equations" (Tr. 318). To address Claimant's issues, Claimant received classroom accommodations for breaking assignments into a series of smaller assignments and repeating, reviewing, and drilling of concepts (Tr. 319-20). Additionally, Claimant received other accommodations to allow him to access the general curriculum and make effective progress, including a small group setting for

reinforcement and tests, a flexible test schedule, extended time for assignments and tests, and text-to-speech for computer-based activities and tests (Tr. 320). He would also receive assistance in reading for 180 minutes weekly, assistance in written expression 45 minutes weekly, assistance in mathematics 225 minutes weekly, assistance in reading 60 minutes every school day, assistance in written expression 30 minutes every school day, and assistance in mathematics 90 minutes every school day, all occurring in a general education classroom with more than 79% of his time spent in a non-ESE setting (Tr. 321-22).

Following that, Claimant presented for his August 2019 evaluation with Dr. Landrum at the request of the SSA, with the findings as detailed above (Tr. 332-34). The next month, Claimant's eighth-grade math and language arts teachers submitted teacher questionnaires describing and rating Claimant's abilities, including the abilities to acquire and use information and to attend and complete tasks (Tr. 174-81, 184-91).[2] As to Claimant's ability to acquire and use information, Claimant's math teacher concluded that Claimant showed (1) a serious problem recalling and applying previously learned material; (2) an obvious problem understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanation and adequate descriptions, expressing ideas in written form, learning new material, and applying problem-solving skills in class discussions;

---

[2] The rating scale included the following options: no problem, a slight problem, an obvious problem, a serious problem, or a very serious problem (Tr. 174-81, 184-91).

and (3) a slight problem in comprehending oral instructions (Tr. 175). The language arts teacher set forth similar findings, except that she found an obvious problem in comprehending oral instructions and recalling and applying previously learned material and only a slight problem in understanding and participating in class discussions and in providing organized oral explanations and adequate descriptions (Tr. 185). The language arts teacher clarified that Claimant appeared to remain attentive and working but, when asked to practice what was taught, could not mimic the steps to get to the correct conclusion (Tr. 185).

Regarding Claimant's ability to attend to and complete tasks, Claimant's math teacher indicated that Claimant would experience (1) an obvious problem paying attention when spoken to directly, focusing long enough to finish assigned activity or task, refocusing to task when necessary, and carrying out single-step instructions; (2) a slight problem in sustaining attention during play or sports activities, carrying out multi-step instructions, completing classwork and homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace and finishing on time; and (3) no problem waiting to take turns, changing from one activity to another without being disruptive, organizing his own things or school materials, and working without distracting himself or others (Tr. 176). The math teacher additionally noted that Claimant was very quiet and struggled academically (Tr. 181). As to Claimant's ability to attend to and complete tasks, the language arts teacher offered a slightly different assessment, finding (1) an obvious problem focusing long enough to finish assigned activity or task, carrying out single-step instructions, carrying

16

out multi-step instructions, completing classwork and homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace and finishing on time; (2) a slight problem in refocusing to task when necessary; and (3) no problem in paying attention when spoken to directly, sustaining attention during play or sports activities, waiting to take turns, changing from one activity to another without being disruptive, organizing his own things or school materials, and working without distracting himself or others (Tr. 186). In support, she stated that Claimant struggled with completing tasks, such that, if he received instructions step by step, he could still not complete the activity within the time allotted in class (Tr. 186). She also indicated that Claimant tended to sit and not express that he was struggling with understanding what was expected of him (Tr. 189).

Thereafter, in October 2019, when Claimant was 13 years and two months old, Claimant presented for a speech and language evaluation with Deborah L. Adams, Ph.D. (Tr. 336-42). Dr. Adams conducted the OWLS-IIA test, determining that Claimant's receptive score equated to a child of eight years and six months old, and his expressive score equated to a child of nine years and five months old (Tr. 339). As to Claimant's receptive weaknesses and strengths, Dr. Adams stated that Claimant struggled to understand idioms and to make inferences but was able to understand complex sentences and figurative language (Tr. 339). With respect to Claimant's expressive weaknesses and strengths, Dr. Adams noted that Claimant struggled to compose complex sentences and idioms but was able to understand lexical ambiguity and verbal reasoning (Tr. 339). Dr. Adams then noted that Claimant's oral motor

assessment, voice, and fluency all fell within normal limits and that Claimant could articulate spontaneously with no errors (Tr. 340-41).   Regarding speech intelligibility, Dr. Adams found that Claimant maintained the ability to perform conversational level speech (Tr. 341).   In sum, Dr. Adams found that given Claimant's lack of speech sound errors and his voice quality, fluency, and conversational speech intelligibility functionality, speech intervention was not indicated (Tr. 342).   Given Claimant's moderately impaired language skills, however, Dr. Adams found that language intervention was indicated (Tr. 342).

Following that, another IEP review occurred in February 2020 (Tr. 346-56).  At that time, it was determined that Claimant benefited from the services he received through Special Education and that he remained eligible for Special Education Services based on his language impairment (Tr. 346-47).   Claimant's 2019-2020 report cards indicated that he earned As, Bs, and Cs with one D for the first two quarters of the year but then received Fs in pre-algebra, comprehensive science, language arts, and intensive reading in the third quarter (Tr. 355-56).   Similarly, during the 2020-2021 school year, Claimant earned As, Bs, and Cs with a D in English his first quarter but then earned Fs in digital information technology and 2-D studio art and Ds in intensive reading, English, and algebra (Tr. 417).

As a result, in May 2020, when Claimant was in eighth grade, another annual IEP review occurred (Tr. 418-34).   Due to continued issues from his language impairment, it was determined that Claimant needed direct, specialized instruction for some learning activities and assistance for some learning activities in the general

education setting (Tr. 420-21).  Plaintiff expressed concern regarding Claimant's test scores and hoped to improve his study habits and academic levels but also stated that she was proud of Claimant for the progress shown in his education (Tr. 422).  It was noted that Claimant was pursuing general education courses and receiving ESE services and accommodations to prepare him for high school graduation and obtaining a standard high school diploma (Tr. 423-24).  FSA testing revealed that Claimant was currently on academic level one but needed to earn an academic level three in math and language arts to be on grade level (Tr. 425).

One of the areas where Claimant was determined to need instruction or the provision of information was in the area of self-determination and self-advocacy in order to assist Claimant in actively and effectively participating in his IEP meetings and to self-advocate so that his post-secondary goals could be identified (Tr. 423). Indeed, several of his teachers indicated that Claimant had been working on his communication and informing the teachers when he needed extra help on the assignments but that he did not always ask for help and would sit quietly not completing or turning in quality work due to his lack of ability to complete the work (Tr. 425-26).  They indicated that he has slowly improved and learned how to advocate for himself but that he needed to work on continuing to reach out with concerns, with continued support, especially from his Inclusion Teacher, and practice deemed beneficial to him (Tr. 425-26).

The IEP team identified Claimant's strengths as taking notes in class and using the notes as a resource to help aid his learning and help with completion of assignments

(Tr. 426).  They noted that his significant difficulty with solving multi-step equations and determining the definition for vocabulary words affected his involvement and progress in the general curriculum by keeping him from being on grade level (Tr. 426). Accordingly, Claimant's priority educational needs included learning and applying strategies to help him solve multi-step equations and applying the skills of using context clues to help determine the meaning of unknown vocabulary words (Tr. 426). To address his issues, Claimant received the following accommodations: frequent breaks; text-to-speech for directions and test items not for reading; text-to-speech for directions, prompts, items, and answer choices; an opportunity for him to paraphrase and repeat directions; increased wait time; repeated, summarized, or clarified directions; small group setting for reinforcement and tests; given directions in small, distinct steps; allotment of extended time for assignments and tests (Tr. 427-28).  He was to receive consultation regarding academics weekly, direct instruction in learning strategies 45 minutes every school day, assistance in mathematics 45 minutes every school day, and assistance with written expression for 45 minutes every school day (Tr. 429).

As it is not my role to reweigh the evidence or substitute my judgment for the ALJ, I make no finding as to whether Claimant's impairment met or functionally equaled the criteria for Listing 112.05.  *Mitchell*, 771 F.3d at 782; *Winschel*, 631 F.3d at 1178 (citations omitted).  That is the role of the ALJ.  Upon remand, therefore, the ALJ should consider whether Claimant's impairments met or functionally equaled the criteria for Listing 112.05, as well as any other relevant Listing.

*IV.    Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.  Accordingly, after consideration, it is hereby

ORDERED:

1.    The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.    The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 23rd day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record